IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANDREW COLLINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:11-CV-0887-B |
| | § | ECF |
| PAUL BAUER, HENRY DUETSCH, | § | |
| and KEVIN RANDOLPH, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' JOINT MOTION
FOR PROTECTIVE ORDER TO STAY DISCOVERY**

Plaintiff Andrew Collins ("Collins") hereby files his Response to Defendants' Joint Motion for Protective Order to Stay Discovery (doc. # 31) and would respectfully show the Court as follows:

**I.   Procedural Background**

In his Complaint (doc. # 2), Collins asserts claims pursuant to 42 U.S.C. §§ 1983 and 1985 against former Dallas police officers Paul Bauer, Henry Duetsch, and Kevin Randolph in their individual capacities for excessive force, deprivation of equal protection under the law, malicious prosecution, and conspiracy to interfere with civil rights under the Fourth and Fourteenth Amendments to the United States Constitution and laws of the United States.

The Defendants have filed numerous motions to dismiss, for judgment on the pleadings, and to require Collins to file a Rule 7(a) reply (docs. # 16, 25, 26, 29, 30). Judge Boyle has referred these motions to this Court for recommendation or determination. In

addition, the Defendants have filed Answers in which each former officer asserts his entitlement to qualified immunity (docs. # 17, 20, 22).

Defendants also have filed this Joint Motion for Protective Order to Stay Discovery. In their motion, Defendants assert that they should not be subject to any discovery or required to submit the usual Rule 26(a)(1) disclosures until the Court "enters a final ruling upon Defendants' entitlement to qualified immunity in this matter." Joint Motion at ¶ 2. In paragraph 7 of their motion, however, the Defendants also ask for what would undoubtedly be a much longer stay, until the criminal cases against them are resolved.

## II.    Factual Background

On September 5, 2010, Collins had been riding his motorcycle and was stopped in the 2500 block of Martin Luther King, Jr. Boulevard in Dallas. Defendants Bauer and Randolph activated the lights of their patrol car as Collins rode away on his motorcycle. Although a police sergeant ordered Defendants Bauer and Randolph not to chase Collins, the officers ignored the order and chased after Collins, which violated both the sergeant's command and the city's no-chase policy. The police officers weaved through residential streets and even drove the wrong way on a service road.

During the chase, a camera placed on the patrol car's dashboard recorded the police officers' comments. Either Defendant Bauer or Defendant Randolph can be heard saying, "Keep us going. I'm going to kick the [expletive] out of him." The chase ended in the 4900 block of Lamar Street when the patrol car ran into Collins's motorcycle.

Although Collins immediately dropped to the ground and spread his arms and legs, Defendant Bauer and Defendant Randolph raced from their patrol car and beat Collins.

The dashboard camera recorded Defendant Randolph striking Collins at least four times with his baton while Defendant Bauer hit Collins with his fists and knee and choked Collins.

At no point did Collins kick at the police officers or resist their commands or actions. Even *after* Collins had been handcuffed, the police officers continued to hurt him. Defendant Bauer bent Collins's arms back while Defendant Randolph put his knee into Collins's back. At this point, the police officers moved Collins away from the view of the dashboard camera. Defendant Duetsch had arrived at the scene by this point and moved the dashboard camera on another patrol car so that the police officers' actions would not be captured on film.

Defendant Bauer and Defendant Randolph dropped Collins on the ground and began to bend and twist his arms and his ankles while trying to choke Collins with his necklace. One of the officers that surrounded Collins picked him up by the chain of the handcuffs, dropped him on his face back to the ground, and told Collins that he was going to blow Collins's "[expletive] brains out" and that if he had stopped Collins, he would have sent him to the I.C.U. (the intensive care unit at a hospital). This same individual, with encouragement from the Defendants, then bent Collins's wrists and twisted his ankles. Other Dallas police officers rushed to the scene. They stood around Collins after he had been placed in handcuffs. Some officers continued to hurt Collins while he remained face down on the ground.

While the police officers continued to beat on and to hurt Collins, he pleaded with them to stop, saying "Please stop" and "You are hurting me." The Defendants responded

by yelling at Collins, "Put your [expletive] face in the dirt" and "Take this [expletive]." They ordered Collins to "Quit crying." Once Collins was placed in a patrol car, some police officers gathered in another patrol car to watch the videos captured by the dashboard cameras.

An ambulance arrived and the police officers picked Collins up by the handcuffs. Although Collins told the paramedic that he needed to go to the hospital to seek treatment for his injuries, the paramedic deferred to the police officers. One of the police officers told the paramedic, "[Expletive] him, he's going to jail." Consequently, Collins did not receive the medical attention he requested even though the Defendants' actions left him struggling to breathe.

The Defendants used excessive force and delayed Collins's access to medical treatment, thereby causing him injuries. Then, in an attempt to cover up their excessive use of force, the Defendants arrested Collins and charged him with resisting arrest.

Following the incident, the Dallas Police Department conducted an investigation, and as a result, Defendant Randolph was fired and Defendant Bauer and Defendant Duetsch were placed on administrative leave. They were later fired for their involvement in the incident. Felony criminal charges are currently pending against all of the Defendants.

### III. Argument and Authorities

The Defendants are not entitled to a Protective Order to Stay Discovery in this case. According to the Supreme Court and the Fifth Circuit, Collins may conduct limited discovery concerning the Defendants' alleged entitlement to qualified immunity.

Moreover, the fact that criminal charges are pending against the Defendants does not preclude Collins from conducting limited discovery regarding qualified immunity.

    A.    **Collins is Entitled to Conduct Limited Discovery Regarding Qualified Immunity**

The majority of Defendants' joint motion is devoted to a lengthy recitation of the elements of qualified immunity. First, Defendants argue that they should not be subject to *any* discovery -- not even on the threshold issue of their entitlement to qualified immunity -- merely because they have asserted qualified immunity. In other words, according to Defendants, the Court should simply take their word for it that each of them is entitled to qualified immunity, and prohibit Collins from ever ascertaining facts which would establish the truth or falsity of the assertions. Second, Defendants *presume* that their 12(b) motions will be successful -- before Collins has filed his responses to those motions and certainly before the Court has had the opportunity to consider them -- and base their arguments contesting all discovery on that flawed premise. Defendants' arguments are incorrect, and they are not entitled to a protective order to stay discovery in this case.

Defendants confuse discovery in a limited scope solely to determine qualified immunity with wide open discovery on the merits. Collins does *not* seek discovery on the merits at this time; he seeks only to probe the truth or falsity of Defendants' assertions that they are entitled to qualified immunity.

Moreover, Defendants' position is contrary to the principles outlined by the Supreme Court in *Crawford-El v. Britton*, 523 U.S. 574; 118 S. Ct. 1584; 140 L. Ed. 2d 759 (1998):

> Discovery involving public officials is indeed one of the evils that *Harlow* [*Harlow* v. *Fitzgerald,* 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)] aimed to address, but neither that opinion nor subsequent decisions create an immunity from *all* discovery. *Harlow* sought to protect officials from the costs of "broad-reaching" discovery, 457 U.S. at 818, and we have since recognized that limited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity.

*Crawford-El*, 523 U.S. at 593 n. 14.

In turn, the Fifth Circuit has recognized that "qualified immunity does not shield government officials from all discovery but only from discovery which is either avoidable or overly broad." *Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir. 1987). The Fifth Circuit explained:

> Discovery orders entered when the defendant's immunity claim turns at least partially on a factual question; when the district court is unable to rule on the immunity defense without further clarification of the facts; and which are narrowly tailored to uncover only those facts needed to rule on the immunity claim are neither avoidable nor overly broad.

*Id.* at 507-08. "Although qualified immunity is immunity from suit, including discovery, discovery may proceed against a government official where the plaintiff's allegations state a claim of violation of clearly established law, as long as such discovery is narrowly tailored to the question of qualified immunity." *Hinojosa v. Johnson*, 277 Fed. Appx. 370; 2008 U.S. App. Lexis 9542, at *20 n. 12 (5th Cir. May 1, 2008). *See Wadsworth v. Hock*, No. 3:10-CV-0220-O-BF, 2010 U.S. Dist. Lexis 124595, at *1 (plaintiff permitted discovery of facts related to the qualified immunity claim). In this case, Collins has sufficiently stated a claim of violations of clearly established law by the Defendants.

Fundamental fairness dictates that the Defendants should not be allowed to invoke qualified immunity while simultaneously denying Collins any discovery regarding their

entitlement to qualified immunity.  Neither Collins nor this Court are required to simply take the Defendants' word for it that they are entitled to qualified immunity.  Collins should be permitted such limited discovery, and the Defendants' motion for a protective order staying all discovery should be denied.

      **B.**     **Collins is Entitled to Conduct Limited Discovery Regardless of the Pending Criminal Cases Against Defendants**

In their Rule 12(b) motions and in this Joint Motion, Defendants vigorously argue that Collins has failed even to properly plead a claim against them for excessive force and the other causes of action.  Defendants appear affronted to have to defend themselves against claims they argue are utterly lacking in merit.  In paragraph 7 of their Joint Motion, however, Defendants admit that they are "currently under criminal prosecution in State District Court in Dallas County arising from the incident upon which this civil action is based."  Defendant Bauer is charged with assault, official oppression, and aggravated assault by a public servant, Defendant Randolph is charged with tampering with a governmental record, official oppression, and aggravated assault by a public servant, and Defendant Duetsch is charged with tampering with physical evidence. Joint Motion at ¶ 7, n. 1.

There exists no general constitutional, statutory, or common law prohibition against the prosecution of parallel criminal and civil actions, even where such actions proceed simultaneously.  *SEC v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 666-67 (5th Cir. 1981) (*citing United States v. Kordel*, 397 U.S. 1, 11, 90 S. Ct. 763, 25 L. Ed. 2d 1 (1970)).  Defendants invoke a previous case in which a similar issue was determined by this Court: *Frierson v. City of Terrell*, No. 3:02-CV-2340-H, 2003 U.S. Dist. Lexis 26443, (N.D. Tex. June 6,

2003). This case is distinguishable from *Frierson* in certain key respects. Here, the Defendants claim that "[t]he necessity of the individual Defendants having to invoke their Fifth Amendment privilege will make discovery in this civil matter virtually impossible." Joint Motion at ¶ 7. In *Frierson*, however, the defendant officer admitted that some of the requested documents -- for instance, his regularly maintained personnel file and some internal investigative materials -- were discoverable and did not implicate his Fifth Amendment privilege. *Frierson* at *3. Likewise, in this case it is likely there will be materials related to qualified immunity that do not implicate the Defendants' Fifth Amendment privilege, yet the Defendants seek a blanket stay of *all* discovery before Collins has had the opportunity even to frame his discovery requests.

> In *Frierson*, the Court analyzed the issues under the following standards:
>
> When the Fifth Amendment privilege is invoked in a civil proceeding to avoid discovery, a court must conduct a "particularized inquiry, deciding in connection with each specific area that the questioning seeks to explore, whether or not the privilege is well-founded." *SEC v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 668 (5th Cir. 1981). "Even where a party has a legitimate claim of privilege with respect to certain questions or lines of inquiry, that person may not be entitled to invoke his privilege to remain totally silent. Only where the court finds that he could 'legitimately refuse to answer essentially all relevant questions,' because of the threat of incrimination from any relevant questioning is a person totally excused from responding to relevant inquiries. Otherwise, a person is entitled to invoke the privilege '(o)nly as to genuinely threatening questions . . . .'" *Id.* at 668-69 (*quoting United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir. 1976)). "A blanket assertion of the privilege without inquiry by the court, is unacceptable." *United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir. 1980). The court may conduct an *in camera* review of the items at issue to determine if the privilege applies. *See id.* If, after such a review, the court finds that the privilege is well-founded, the court may stay or postpone civil discovery or issue a protective order.

*Frierson* at *4-5.

In this case, the Court has had no opportunity to conduct the requisite "particularized inquiry" into the Defendants' assertions of their Fifth Amendment privileges, because the Defendants are attempting to foreclose all discovery before Collins has propounded a single discovery request. The time to evaluate assertions of Fifth Amendment privilege is *after* the Defendants have tendered the documents or other information they claim are privileged to the Court for an *in camera* review, as the parties did in *Frierson*.

As the Court observed in *Frierson*, in deciding whether to stay discovery in light of a party's Fifth Amendment privilege, the Court must balance the interests of the party asserting the privilege against any prejudice resulting to the other parties. *Frierson* at *6-7. The Court uses a six-factor test in achieving that balance: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously, weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest. *Id*.

Collins acknowledges that issues in the Defendants' criminal cases likely overlap with the issues presented in this case, and that the Defendants have been indicted. Those factors do not require the Court to impose the complete discovery stay that the Defendants seek. As recognized in *Frierson*, some of the testimony and documents relevant to qualified immunity will not implicate any Fifth Amendment privilege, and it is unfair the preclude Collins from obtaining such information. Although the Defendants may assert their Fifth

Amendment right against self incrimination in this case, to warrant a stay, they must show that the civil and criminal proceedings overlap to such a degree that either (1) they cannot protect themselves in the civil proceeding by selectively invoking their Fifth Amendment privilege, or (2) cannot possibly effectively defend both actions. *Kastigar v. U.S.*, 406 U.S. 441, 92 S.Ct. 1653, 1656, 32 L. Ed. 2d 212 (1972). The Defendants have not shown any reason that they cannot selectively invoke their Fifth Amendment rights in the context of civil discovery or that it is impossible for them to simultaneously defend the civil and criminal actions. In addition, "the potential for prejudice to a criminal defense is diminished where private parties, and not the government, are the plaintiffs in the civil action." *Alcala v. Webb County*, 625 F. Supp. 2d 391, 402 (S.D. Tex 2009).

Moreover, the fact that the Defendants <u>may</u> at some future point assert their Fifth Amendment privilege as to certain specific information does not mean that they can foreclose discovery of all relevant information. More than four decades ago, the Supreme Court observed that it is not unconstitutional to force civil defendants to choose between the negative inferences drawn from their silence in a civil case (unlike a criminal case) and their Fifth Amendment privilege. *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976); *see Mid-America's Process Serv. v. Ellison*, 767 F.2d 684, 686 (10th Cir. 1985) (holding that a civil defendant who asserts the Fifth Amendment privilege "may have to accept certain bad consequences that flow from that action.")

As for the third factor, the Court concluded in *Frierson* that the plaintiff would not be unduly prejudiced by the delay in large measure because "the majority of the information that Officer provided to the Court for *in camera* review was similar to the information

provided by [the] City.  Although Plaintiff may not proceed expeditiously against Officer while the stay is in place, Plaintiff's prejudice is mitigated by being able to discover most of the same information from City . . . "  *Frierson* at *10-11.  In this case, however, the City of Dallas is not a party and Collins does not have the same ability to obtain discovery from the City as the plaintiff in *Frierson* had.  Additionally, delay can lead to the loss of evidence and duly frustrate a plaintiff's ability to put on an effective case because with the passage of time, witnesses become unavailable, memories of conversations and dates fade, and documents can be lost or destroyed.  *Alcala v. Webb County*, 625 F. Supp. 2d 391, 405 (S.D. Tex 2009).

Regarding the fourth factor of the private interests of the defendant, in *Frierson* the Court was not persuaded that the interests of justice required that *all* discovery be halted (as the Defendants request in this case), and noted that some non-privileged information was discoverable from the City and the defendant.  *Frierson* at *11.  Here, Collins has not had that same opportunity to discover even non-privileged information from the City of Dallas or any of the Defendants.  Regarding the fifth factor, the Court has an interest in ensuring that matters are moved expeditiously through the judicial system.

Finally, as to the sixth factor, in *Frierson* the Court noted that "[t]he public has an interest in the just and constitutional resolution of disputes with minimal delay."  *Frierson* at *12.  The public interest is especially acute in this case, because of the local and national news media attention that the Defendants' beating of Collins has received since the incident.  In fact, not only were there internal affairs investigations that resulted in the firing of all three Defendants as police officers, the Federal Bureau of Investigation has opened an

investigation into the matter. This stands in sharp contrast to the situation in *Frierson* involving the alleged sexual harassment by one police officer of another police officer in the same department.

In summary, *Frierson* is distinguishable from Collins's case in many significant respects, and the Court's decision to grant a partial discovery stay in that case does not mandate a similar decision here. Moreover, notwithstanding the Court's ultimate decision to impose a partial stay in *Frierson*, the Court permitted the plaintiff to obtain documents and other materials containing statements by persons other than the defendant officer, the officer's activity log, the police department's daily call log for the date in question, the officer's payroll records, surveillance photographs, and other non-compelled statements, which the Court noted did not implicate the defendant's privilege because they did not contain his compelled statements. *Frierson* at *18-19. At a minimum, Collins should be permitted to discover information other than the Defendants' compelled statements in their internal affairs investigations.

## IV. Conclusion

For the reasons discussed above, the Defendants are not entitled to a Protective Order to Stay Discovery in this case. According to the Supreme Court and the Fifth Circuit, Collins may conduct limited discovery concerning the Defendants' alleged entitlement to qualified immunity. Moreover, the fact that criminal charges are pending against the Defendants does not preclude Collins from conducting limited discovery regarding qualified immunity. Collins therefore asks the Court to: (1) deny the Defendants' Joint Motion for Protective Order to Stay Discovery in all respects; (2) require the Defendants to

submit their Rule 26(a)(1) disclosures; (3) permit Collins to proceed with discovery regarding the qualified immunity issues; and (4) grant all other relief to which Collins may be entitled.

           Respectfully submitted,

By:   */s/ Don Tittle*
     Don Tittle
     Texas Bar No. 20080200
     LAW OFFICES OF DON TITTLE
     3102 Maple Avenue, Suite 450
     Dallas, Texas 75201
     214/522-8400
     214/953-9380 – Fax
     dontittle@earthlink.net

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon counsel for Defendants by electronic service via the Court's CM/ECF system on this the 25th day of July, 2011.

           */s/ Don Tittle*
           Don Tittle