**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| ANDREW COLLINS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:11-CV-00887-B |
| § | |
| PAUL BAUER, et al., § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to referral orders dated August 22-23, 2011, before the Court for recommendation or determination are *Defendant's 12 (b)(6) Motion; Alternative 7(a) Motion; and Brief in Support in Response to Plaintiff's First Amended Complaint*, filed August 18, 2011 (doc. 44), *Defendant Randolph's Renewed Rule 12 Motion for Partial Judgment on the Pleadings, and Brief,* filed August 18, 2011 (doc. 47), *Defendant Randolph's Renewed Motion to Require Plaintiff to File a Reply Under Fed. R. Civ. P 7(a), and Brief,* filed August 19, 2011 (doc. 49), *Defendant Paul Bauer's Renewed Motion for Partial Judgment on the Pleadings and Brief in Support,* filed August 19, 2011 (doc. 52), and *Defendant Paul Bauer's Renewed Motion for Rule 7 Reply and Brief in Support*, filed August 22, 2011 (doc. 54). Based on the relevant filings and applicable law, the motions for a Rule 7(a) Reply (docs. 44, 49, 54) are **DENIED as moot**, the motion to dimiss (doc 44) should be **DENIED, in part,** and **DENIED as moot, in part**, and the motions for partial judgment on the pleadings (docs. 47, 52) should be **DENIED**.

**I.  BACKGROUND**

Andrew Collins (Plaintiff) sues current or former Dallas police officers Paul Bauer, Henry Duetsch, Kevin Randolph, and John Does 1-4 in their individual capacities under 42 U.S.C. §1983

for alleged violations of his civil rights. (doc. 43, pp. 1-2, ¶¶ 1-5.) He alleges claims of excessive force, conspiracy, and assault and battery under state law against Randolph, Bauer, and John Doe 1. (*Id.*, pp. 6-9.) He alleges claims for bystander liability and conspiracy under § 1983 against Duetsch and John Does 2-4. (*Id.*)

Plaintiff's complaint contends that on or about September 25, 2010, Bauer and Randolph were in their patrol car when they spotted Plaintiff on his motorcycle. (doc. 43, p. 2, ¶ 9.) Although the officers activated the lights on their patrol car, Plaintiff rode away. (*Id.*) A police sergeant ordered the officers not to chase Plaintiff, but the officers ignored this command and started chasing him in violation of the city's no chase policy and the sergeant's order. (*Id.*, ¶ 10.) They weaved through residential streets and drove the wrong way on a service road. (doc. 43, p. 3, ¶ 10.) A camera placed on the patrol car's dashboard recorded the officers' comments during the chase. (*Id.*, ¶ 11.) Either officer Bauer or officer Randolph can be heard saying, "Keep us going. I'm going to kick the [expletive] out of him." (*Id.*)

The chase ended when the patrol car ran into Plaintiff's motorcycle. (doc. 43, p. 3, ¶ 12.) Although he immediately dropped to the ground and spread his arms and legs, Bauer and Randolph raced from the patrol car and started beating him. (*Id.*, ¶ 13.) The dashboard camera recorded Randolph striking Plaintiff at least four times with his baton while Bauer hit Plaintiff with his fists and knee and choked him. (*Id.*) The officers can be seen kicking, punching, and beating Plaintiff with the baton on the video. (*Id.*) Plaintiff claims that at no point did he kick at the police officers or resist their commands or actions. (doc. 43, p. 3, ¶ 14.) He alleges that even after he had been handcuffed, the police officers continued to hurt him. (*Id.*, ¶ 15.) Bauer allegedly bent Plaintiff's arms back while Randolph forcefully put his knee into Plaintiff's back. (*Id.*)

2

By that time, other officers had arrived at the scene. (*Id.*) One of those officers, John Doe 1, struck Plaintiff. (*Id.*) Three other officers, John Does 2-4, allegedly observed the use of excessive force on Plaintiff but stood by and took no action to stop the officers from beating Plaintiff. (*Id.*) At that point, the police officers moved Plaintiff away from the dashboard camera's view. (doc. 43, p. 4, ¶ 16.) Duetsch also arrived at the scene and can be seen and heard whistling as he moved a dashboard camera on another patrol car away from a view of Plaintiff and the officers, so that the officers' actions would not be captured on film. (*Id.*)

Bauer and Randolph then dropped Plaintiff on the ground and began to bend and twist his arms and ankles while trying to choke him with his necklace. (doc. 43, p. 4, ¶ 17.) One of the officers surrounding Plaintiff, John Doe 1, allegedly picked him up by the chain of the handcuffs, dropped him on his face back to ground, and told him that he was going to blow his "[expletive] brains out," and that he would have sent Plaintiff to the I.C.U. if he had stopped him. (*Id.*) John Doe 1, with encouragement from the other defendants, then allegedly bent Plaintiff's wrists and twisted his ankles, causing him great pain. (*Id.*)

Other Dallas police officers, John Does 2-4, had also rushed to the scene. (doc. 43, p. 4, ¶ 18.) They allegedly stood around Plaintiff – after he had been placed in handcuffs – and failed to intervene while the officers continued to hurt him as he remained face down on the ground. (*Id.*) While the police officers continued to beat and hurt Plaintiff, he pleaded with them to stop, saying "Please stop" and "You are hurting me." (doc. 43, p. 4, ¶ 19.) They allegedly responded by yelling, "Put your [expletive] face in the dirt", "Take this [expletive]," and "Quit crying." (*Id.*) When Plaintiff was placed in a patrol car, some police officers allegedly gathered in another patrol car to watch the videos from the dashboard cameras. (*Id.*, p. 5, ¶ 20.)

3

At some point, an ambulance arrived at the scene, and the police officers picked him up by the handcuffs. (*Id.*, ¶ 21.) Although he told the paramedic that he needed to go to the hospital for his injuries, one of the police officers allegedly told the paramedic, "[Expletive] him, he's going to jail." (*Id.*) As a result of the officers' actions, Plaintiff did not receive the medical attention he requested and suffered physical and emotional injuries, including bruising and swelling of his body, a blood clot, and pain. (doc. 43, pp. 5-6, ¶¶ 21, 26.) In what the complaint describes as an attempted cover up, the defendants arrested Plaintiff, charged him with resisting arrest, and falsified their police reports. (*Id.*, p. 5 ¶ 23.) The resisting arrest charge was subsequently dropped. (*Id.*)

Within a few hours after this incident, a Dallas police sergeant received an anonymous note advising him to view the video footage of the incident. (doc. 43, p. 5, ¶ 24.) The Dallas Police Department conducted an investigation and subsequently fired Randolph, Bauer and Duetsch. (*Id.*) Felony criminal charges are currently pending against Randolph, Bauer and Duetsch. (*Id.*, p.6, ¶ 24.) John Does 1-4 are allegedly the subjects of the Internal Affairs investigation and were placed on administrative leave. (doc. 43, pp. 5-6, ¶ 24.) At all times material to the complaint, the defendants were acting under color of the statutes, customs, ordinances, and usage of the State of Texas and the City of Dallas. (*Id.*, ¶ 25.)

Against the backdrop of these allegations, Duetsch now moves to dismiss all of the claims against him under Fed. R. Civ. P. 12(b)(6) for failure to state a claim (doc. 44), and Randolph and Bauer move for partial judgment on the pleadings under Fed. R. Civ. P. 12(b)(6), 12(c), and 12(h) with respect to the conspiracy claim against them (docs. 47, 52). The three defendants also request an order requiring Plaintiff to file a reply under Fed. R. Civ. P. 7(a) to the assertion of their qualified immunity defense in their respective responses. (docs. 44, 49, 54.)

## II. MOTIONS FOR A RULE 7(a) REPLY (DOCS. 44, 49, 54)

Randolph and Bauer separately move for an order requiring Plaintiff to file a Rule 7(a) reply to their qualified immunity defense under *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (*en banc*). (docs. 49, 54.) Duetsch requests an order requiring a Rule 7(a) reply as an alternative to its motion to dismiss. (doc. 44.) Plaintiff does not challenge these motions and has filed a Rule 7(a) reply to the defendants' respective answers. (doc. 64, p. 1.) Since Plaintiff has already filed a Rule 7(a) reply (doc. 66), the motions requesting an order requiring such a reply are **DENIED as moot**.

## III. 12(b)(6) MOTION TO DISMISS (DOC. 44.)

Pursuant to Rule 12(b)(6), Duetsch moves to dimiss Plaintiff's failure-to-intervene claims under § 1983, and his conspiracy claim under § 1985 for failure to state a claim. (*See* doc. 44.)

### A. Rule 12(b)(6) Standard

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord*

5

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950-51.

**B. Bystander Liability/Failure-to-Intervene**

Duetsch asserts that Plaintiff has not pled sufficient facts to overcome his qualified immunity defense to the failure to intervene claim under § 1983. (doc. 44, p. 1.)

A governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because an official is entitled to immunity from suit,

6

not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. The first prong entails consideration of whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to the case at hand. *Pearson*, 129 S. Ct. at 818; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) ("*Saucier's* rigid 'order of battle'. . . is now advisory."). If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

The plaintiff has the burden to show the inapplicability of an asserted qualified immunity defense. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). To satisfy that burden on a motion to dismiss, the plaintiff must facts showing that a defendant violated the plaintiff's constitutional rights and that the violation was objectively unreasonable. *Club Retro, LLC*, 568 F.3d at 194; *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). Duetsch essentially argues that Plaintiff has failed to plead facts suggesting that defendant Duetsch violated his

7

constitutional rights and that the constitutional violation, if any, was objectively unreasonable. (doc. 44, pp. 2-3, 6-9.)

    1. Constitutional Violation

Plaintiff claims that Duetsch violated the Fourth Amendment when he failed to take reasonable measures to protect him from the other officers' use of excessive force despite a reasonable opportunity to realize the excessive nature of the use of force and to intervene. (doc. 43, p. 7.) An officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under § 1983 for a violation of the Fourth Amendment. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). "The claim is essentially one of nonfeasance on the part of law enforcement officers." *Ware v. Reed*, 709 F.2d 345, 353 (5th Cir.1983) (citing *Whirl v. Kern*, 407 F.2d 781, 788 (5th Cir. 1968)). Mere presence at the scene of the alleged use of excessive force, without more, does not give rise to bystander liability. *See Nowell v. Acadian Ambulance Serv.*, 147 F.Supp.2d 495, 507 (W.D. La. 2001). An officer must have had a reasonable opportunity to realize the excessive nature of the force and a realistic opportunity to stop it in order for the duty to intervene to arise. *See Hale*, 45 F.3d at 919; *Nowell*, 147 F.Supp.2d at 507.

Assuming for the purpose of this motion only that Randolph, Bauer, and John Doe 1 used excessive force in arresting Plaintiff, the issue is whether Plaintiff has alleged sufficient facts to show that Duetsch had a reasonable opportunity to realize the excessive nature of the force and a realistic opportunity to stop it.[1] *See Hale*, 45 F.3d at 919. Plaintiff alleges that Duetsch had arrived

---

[1] Defendant Duetsch argues that Plaintiff has not pled any facts to support an inference that he had an opportunity to intervene in the alleged use of the excessive force and has alleged only that officers "whose names are not known to Plaintiff at this time" stood around and failed to intervene. (doc. 44, pp. 2, 8.)

8

at the scene by the time the other officers had handcuffed him and moved him away from the dashboard camera's view. (doc. 23, pp. 3-4.) Plaintiff also alleges that Duetsch "can be seen and heard whistling as he moved a dashboard camera on another patrol car away from a view of Plaintiff and the police officers, so that the officer's actions would not be captured on film." (*Id.*, p. 4.) Plaintiff further alleges that after Duetsch arrived at the scene, other police officers continued to hurt Plaintiff. (*Id.*, pp. 4-5.) Their actions allegedly included dropping him on the ground, bending and twisting his arms and ankles, trying to choke him with his necklace, and picking him up by the chain of his handcuffs and dropping him on his face back to the ground. (*Id.*, p. 4.) One of the officers, John Doe 1, allegedly told him that he was going to blow his "[expletive] brains out" and that if he had stopped Plaintiff, he would have sent him to the I.C.U. (*Id.*) John Doe 1, with encouragement from the other defendants, then allegedly bent Plaintiff's wrists and twisted his ankles, causing Plaintiff great pain. (*Id.*) When Plaintiff allegedly pleaded with them to stop because they were hurting him, the officers allegedly responded by yelling "Put your [expletive] face in the dirt," "Take this [expletive]", and "Quit Crying." (*Id.*)

Accepting these facts as true and viewing them in the light most favorable to the plaintiff, as the Court must at this stage of the proceedings, they suffice to give rise to a reasonable inference that Duetsch saw at least part of the beating and had an opportunity to realize the excessive nature of the force and to stop it. The complaint therefore sufficiently states a constitutional violation by Duetsch.

    2. <u>Objectively Unreasonable</u>

The facts alleged in the complaint are also sufficient to satisfy the second prong of the qualified immunity inquiry – that the alleged constitutional violation was objectively unreasonable.

9

It is well established that an officer's failure to protect an individual from another officer's use of excessive force results in a constitutional violation. *See Miller v. Wills*, 2010 WL 3036491, at *2 (S.D. Miss. July 29, 2010) (citing *Hale*, 45 F.3d at 919). Since the pleaded facts are sufficient to plausibly establish a constitutional violation that was objectively unreasonable, they are sufficient to overcome Duetsch's assertion of his qualified immunity defense at this stage of the proceedings. Duetsch's motion to dismiss Plaintiff's bystander liability/failure-to-intervene claim under § 1983 should therefore be denied.

**C. Conspiracy Claim Under § 1985**

Duetsch next contends that Plaintiff has failed to plead specific facts to overcome his qualified immunity defense on the conspiracy claim under § 1985. (*See* doc. 44.) Plaintiff has not brought his conspiracy claim under § 1985, however; he has expressly brought it under § 1983, which is subject to a different legal standard. *See Ryland v. Shapiro*, 708 F.2d 967, 974 (5th Cir. 1983) (recognizing that "federal courts view conspiracy claims under section 1983 differently than similar claims under section 1985"). Duetsch's motion to dismiss Plaintiff's § 1985 claim should therefore be denied as moot.

**IV. MOTIONS FOR PARTIAL JUDGMENT ON THE PLEADINGS (DOCS. 47, 52)**

Randolph and Bauer move for partial judgment on the pleadings on Plaintiff's § 1983 conspiracy claim. (*See* docs 47, 52.)

**A. Standard for Judgment on the Pleadings**

Parties may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). Rule 12(c) motions are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by

10

looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citation omitted). The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

**B. Intracorporate Conspiracy Doctrine**

Randolph and Bauer move to dismiss Plaintiff's § 1983 conspiracy claim on grounds that it is barred by the intracorporate conspiracy doctrine. (doc. 47, pp. 6-7; doc. 52, pp. 4-5.) They argue that the members of the alleged conspiracy were all employees of a single legal entity, the Dallas Police Department, which is incapable of conspiring with itself. (*Id.*)

To state a conspiracy claim under § 1983, a plaintiff must allege facts to support "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds as recognized by Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992). It is a general principle in conspiracy law that a conspiracy requires two or more persons or entities. *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1953). This principle has given rise to the intracorporate conspiracy doctrine, which provides that a "corporation cannot conspire with itself any more than a private individual can," and "that the acts of the agents are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (citing *Nelson Radio*, 200 F.2d at 914). "[B]ecause the acts of corporate agents are attributable to the corporation itself, a corporation lacks the multiplicity of actors required to form a conspiracy." *Walters v. McMahen*, 795 F.Supp.2d 350, 358 (D. Md. 2011). Although the intracorporate conspiracy doctrine arose in the anti-trust context, it has been applied to public entities and has been

11

extended to civil rights conspiracies under §§1985 and 1983. *See Nelson Radio*, 200 F.2d 911 (antitrust case developing the doctrine); *Hilliard*, 30 F.3d at 653 (applying doctrine to § 1985(3) conspiracy claim involving the school board and its employees); *Thompson v. City of Galveston*, 979 F.Supp. 504, 511 (S.D. Tex. 1997) (applying doctrine to § 1983 conspiracy claim involving police department and police officers).

The intracorporate conspiracy doctrine is not absolute, and there are some recognized exceptions to the doctrine. An exception exists when the alleged conspirators have "an independent stake in achieving the object of the conspiracy." *H & B Equip. Co. v. Int'l Harvester Co.*, 577 F.2d 239, 244 (5th Cir. 1978); *see also Buschi v. Kirven*, 775 F.2d 1240, 1252-53 (4th Cir. 1985) (an exception may be justified when "the officer has an independent stake in achieving the corporation's illegal objective"); *In re Bates*, 2010 WL 2203634, at *21 (Bankr. S.D. Miss. May 27, 2010) (an exception to the intracorporate conspiracy doctrine exists where employees have an independent personal stake in achieving the object of the conspiracy); *Walters v. McMahen*, 795 F.Supp.2d 350, 358 (D. Md. 2011) (recognizing independent personal stake exception); *Baltimore-Washington Tel. Co., v. Hot Leads*, 584 F.Supp.2d 736, 744 (D. Md. 2008) (recognizing exception where officer or agent has independent stake in the corporation's objective).

Another exception exists where the alleged conspirators are acting for their own personal purposes. *See e.g. Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981) (stating in dicta that where "the officers of a corporation act for their own personal purposes, they become independent actors, who can conspire with the corporation"); *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998) (a "possible exception" to the doctrine exists where corporate employees act for there own personal purposes"); *Nelson Radio*, 200 F.2d at 914 ("Nor is it alleged

12

affirmatively, expressly, or otherwise, that these officers, agents, and employees were actuated by any motives personal to themselves"); *Buschi*, 775 F.2d at 1252-53 (the doctrine does not apply when the employees are dominated by personal motives); *Perkins v. Gregg Cnty., Texas*, 1995 WL 836051, at *5 (E.D. Tex. Dec. 6, 1995) (the doctrine does not apply "when the conspiracy serves the corporate employees' personal purposes"); *LED Sign Co. LLC v. Hwee*, 2008 WL 5114957, at *8 (S.D. Tex. Dec. 3, 2008) ("corporate employees or directors who are acting for their personal purposes can conspire with each other or the corporation").

Finally, an exception exists when the defendants act outside the scope of their employment, their actions exceed the bounds of their authority, or they have engage in unauthorized acts. *See e.g.* *Buschi*, 775 F.2d at 1252-53 (the doctrine does not apply when the employees exceed the bounds of their authority or they engage in unauthorized acts in furtherance of the conspiracy); *Cross v. General Motors Corp.*, 721 F.2d 1152, 1156 (8th Cir. 1983), *cert. denied*, 466 U.S. 980 (1984) (recognizing an actionable conspiracy where the alleged conspirators acted outside the scope of their employment); *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) (a corporation's employees, "when acting in the scope of their employment, cannot conspire among themselves"); *ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 81 (S.D. Tex. 2007) ("it is implicit in the intracorporate doctrine that employees, directors, and agents of a corporation, who are not acting within the scope of their employment, can conspire with that corporation"); *Hwee*, 2008 WL 5114957, at *8 (corporate employees or directors acting outside the scope of their employment can conspire with each other); *Garvin v. World Color Printing (USA) II Corp.*, 2011 WL 1485998, at *6 (N.D. W. Va. Apr. 19, 2011) (the "unauthorized acts" exception requires that the agents act outside the scope of their employment); *In re Bates*, 2010 WL 2203634, at *21 (the "unauthorized

13

acts" exception exists where the agents act outside the normal course of their corporate duties).

Here, all of the defendants are members of a single entity, and a conspiracy claim against them would generally be barred by the intracorporate conspiracy doctrine, even if the conspiracy is alleged against the police officers in their individual capacities and even if the police department is not alleged to have been a party to the conspiracy. *See Reynosa v. Wood*, 134 F.3d 369, 369 (5th Cir. 1997) (per curiam) ("where all of the defendants are members of the same collective entity, the conspiracy does not involve two or more people"); *Buschi*, 775 F.2d at 1251-52 (officers or employees of the same entity do not provide the plurality of actors necessary for a civil conspiracy and immunity under the doctrine is not destroyed by suing the corporate actors in their individual capacities); *Veney v. Ojeda*, 321 F.Supp.2d 733, 748 (E.D. Va. 2004) (police officers, though agents of a single entity, could not legally conspire with one another, even if they were sued in their individual capacities).

However, Plaintiff alleges that the defendants, including Randolph and Bauer, entered into a conspiracy to deprive him of his rights to be free from excessive force and acted in concert when they either used excessive force against him or failed to intervene to stop the use of excessive force. (doc. 43, pp. 7-8.) Plaintiff alleges that the events occurred despite a direct order by a sergeant not to chase him and despite the City's no-chase policy. (*Id.*, pp. 2-3.) These allegations are sufficiently specific to plead that Randolph and Bauer engaged in unauthorized acts that exceeded the bounds of their authority and that were outside the scope of their employment, and that the purpose of the conspiracy was to advance their own personal interests rather than the interests of the police department. Plaintiff also alleges that the defendants entered into a conspiracy to commit illegal acts to conceal their constitutional violations. (*Id.*, pp. 7-8.) They allegedly moved Plaintiff out of the

14

dashboard camera's view, moved a dashboard camera on another patrol car away from a view of Plaintiff and the police officers, tampered with evidence, and filed a false police report in an effort to conceal their actions. (*Id.*, pp. 4, 7-8.)

As noted, the Court must accept Plaintiff's facts as true and view them in the light most favorable to him at this stage of the proceedings. His allegations sufficiently plead that the alleged conspiracy was meant to serve the defendants' own personal purposes rather than to advance the objectives of the police department. *See Hill v. City of New York*, 2005 WL 3591719, at * 6 (E.D.N.Y. Dec. 30, 2005) (the personal interest or personal stake exception applied where plaintiff alleged that the defendant conspired with others to cover up his alleged use of excessive force). Because the complaint sufficiently pleads the exceptions to the intracorporate conspiracy doctrine, Randolph and Bauer's motion to dismiss Plaintiff's conspiracy claims should be denied.

## V.  RECOMMENDATION

The motions for a Rule 7(a) Reply filed by defendants Duetsch, Randolph, and Bauer (docs. 44, 49, 54) are **DENIED as moot**.  The motion to dimiss filed by defendant Duetsch (doc. 44) should be **DENIED, in part,** and **DENIED as moot, in part**.  The motions for partial judgment on the pleadings filed by defendants Randolph and Bauer (docs. 47, 52) should be **DENIED**.

**SO RECOMMENDED on this 23rd day of January, 2012.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

15

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE