IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANDREW COLLINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-887-B |
| | § | |
| PAUL BAUER, et al., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the order dated August 22, 2011 (doc. 53), before the Court for determination is *Defendants' Emergency Joint Motion to Quash Plaintiff's Request to the City of Dallas, Texas, and for Protective Order to Stay Discovery, and Brief* (doc. 48), filed August 19, 2011. Based on the relevant filings and applicable law, the motion is **DENIED,** in part, and **DENIED as moot,** in part.

## I. BACKGROUND

Plaintiff Andrew Collins sues former Dallas police officers Paul Bauer, Henry Duetsch, and Kevin Randolph (collectively "Defendants")[1] in their individual capacities for allegedly violating his civil rights under 42 U.S.C. §1983. (doc. 43, pp. 1-2.)  He also asserts state law claims for assault and battery against defendants Randolph and Bauer.  (*Id.* at 6-9.)  Defendants are facing criminal prosecution in state court based on the same events giving rise to this federal action.  (doc. 48, p. 8).  They have asserted qualified immunity as a defense in this action (*see* docs. 45, 46, 51), and have twice moved to stay discovery pending resolution of the qualified immunity issue and/or the criminal charges.  (*See* docs. 31, 48.)

---

[1] Plaintiff has also sued unidentified defendants, John Does 1-4.

On June 30, 2011, Defendants filed a joint motion for protective order to stay discovery pending resolution of either the qualified immunity issue asserted in their Rule 12 and Rule 7(a) motions or of the criminal charges against them. (doc. 31.) After Plaintiff filed his unopposed first amended complaint (doc. 43), the dispositive motions were denied as moot (doc. 42). Defendants then filed renewed motions to dismiss, for judgment on the pleadings, and for a Rule 7(a) reply (docs. 44, 47, 49, 52, 54). They also filed a joint motion to quash Plaintiff's request for production of documents to the City of Dallas (the City) and for a protective order to stay discovery. (doc. 48.)

On August 31, 2011, Defendants' joint motion for protective order was granted in part and denied in part. (doc. 62, pp. 1,7.) While all discovery from them was stayed pending determination of the Rule 12 and Rule 7(a) motions, a prolonged stay of discovery pending resolution of the criminal matters was found unnecessary at that particular stage of the litigation. (*Id.* at 3-7.) The Court ruled that if the motions were denied, Plaintiff could seek discovery limited to the qualified immunity issue, and Defendants could assert their Fifth Amendment privilege to avoid discovery at that time. (*Id.* at 4,7.) On January 23, 2012, the Court recommended denial of both Duetsch's motion to dismiss based on qualified immunity and Randolph and Bauer's motions for partial judgment based on the intracorporate conspiracy doctrine. (doc. 70.) Because Plaintiff had filed a Rule 7(a) Reply in response to the motions seeking a Rule7(a) Reply, those motions were denied as moot. (*Id.*) Defendants' joint motion to quash Plaintiff's request for production of documents to the City of Dallas, and for protective order to stay discovery remained pending. (doc. 48.)

Defendants again seek to stay all discovery in this case pending determination of the qualified immunity defense and/or pending the outcome of the criminal charges against them based on the very same arguments in their first discovery motion. (*Id.*, pp. 9.) Those arguments were

addressed in a memorandum opinion and order entered August 31, 2011. (doc. 62.) Because Defendants have not identified any changed circumstances necessitating reconsideration of the motion to stay all discovery, the only issue remaining for consideration is the joint motion to quash Plaintiff's request for production of documents to the City.[2]

## II. ANALYSIS

Defendants seek to quash Plaintiff's request for production of documents to the City based on the defense of qualified immunity and their Fifth Amendment privilege against self-incrimination. (*See* doc. 48.)

### A. Qualified Immunity

Defendants argue that the doctrine of qualified immunity protects them against any discovery, including non-party discovery from the City, until a final ruling has been made on their entitlement to qualified immunity. (doc. 48, pp. 3-7; doc. 63, pp. 3, 8.) Plaintiff responds that discovery from the City does not interfere with the purpose of the qualified immunity doctrine which is to protect "*officials*" from the concerns of disruptive discovery (emphasis added). (doc. 59, pp. 4-5.)

It is well established that government officials are entitled to qualified immunity if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An official's qualified immunity is a defense as well as an immunity from suit. *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1991)). Qualified immunity therefore shields officials "not only from liability but also from the costs of trial and the burdens of

---

[2] It appears from Plaintiff's request for production that the City has agreed to accept a request for production in lieu of a subpoena duces tecum. (*See* doc. 48, p. 4; doc. 50, p. 1.)

broad-reaching discovery." *Gaines v. Davis*, 928 F.2d 705, 707 (5th Cir. 1991) (quoting *Harlow*, 457 U.S. at 817-18.) The qualified immunity doctrine was developed with the recognition that permitting damages suits against government officials can entail substantial social costs, such as the expenses of litigation, diversion of official energy, deterrence of able citizens from government service, and undue inhibition of officers in the discharge of their duties. *See Harlow*, 457 U.S. at 814; *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Thus "subjecting officials to trial, traditional discovery, or both concerning acts for which they are likely immune undercuts the protection from governmental disruption which official immunity is purposed to afford." *Elliott v. Perez*, 751 F.2d 1472, 1478 (5th Cir. 1985).

"[Q]ualified immunity does not shield government officials from all discovery but only from discovery which is either avoidable or overly broad." *Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir. 1987); *see also Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995). Limited discovery, for instance, may be allowed on the issue of qualified immunity if "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity" and "the immunity defense sufficiently turn[s] on a factual issue requiring discovery." *See Wicks*, 41 F.3d at 995-97. Such discovery must be "narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Id.* at 994. Additionally, qualified immunity protects only "individuals acting within the bounds of their official duties and not the governing bodies on which they serve." *Minton v. St. Bernard Parish Sch. Bd.*, 803 F.2d 129, 133 (5th Cir. 1986) (citing *Owen v. City of Independence, Missouri*, 445 U.S. 622 (1980)).

Here, Defendants seek to quash discovery from the City, which is a non-party, and is not protected by qualified immunity. As noted, the qualified immunity doctrine is intended to protect

4

government officials from the burdens of broad-reaching discovery and not the government bodies on which they serve. The doctrine, moreover, may not be read "so broadly as to necessarily prohibit any and all discovery *relating* to a government official asserting a defense of qualified immunity." *Tubar v. Clift*, 2006 WL 521683, at *3 (W.D. Wash. Mar. 2, 2006) (refusing to stay discovery from municipal defendant even though it sought personal information concerning the individual defendant asserting qualified immunity). Discovery from a third party may be proper, even necessary, where the defendants themselves are shielded from discovery by qualified immunity. *See Williams v. City of Dallas*, 178 F.R.D. 103, 111 (N.D. Tex. 1998) (Fitzwater, J.) (the need to obtain evidence from a third party is heightened where defendants assert qualified immunity and a stay of discovery is in place allowing only limited discovery from them). Finally, allowing discovery from a municipality does not circumvent the policies underlying qualified immunity where, as here, the discovery is directed to the municipality and not the individual defendants asserting qualified immunity, the municipality does not oppose but has agreed to provide discovery, and defendants are no longer serving as public officials as a result of the incidents giving rise to the claims against them.[3]

Defendants' joint motion to quash based on qualified immunity is denied.

## B. Fifth Amendment Privilege

Defendants also move to quash Plaintiff's request for production from the City on the ground that the City's investigative files will certainly include coerced statements taken from them as a condition of employment under *Garrity v. New Jersey*, 385 U.S. 493 (1967), that would infringe on

---

[3] Defendants rely on *Gaines v. Davis*, 928 F.2d 705 (5th Cir. 1991) for the proposition that the defense of qualified immunity applies equally to bar discovery sought from third parties or non-parties. (doc. 63, pp. 3, 8). In *Gaines*, the Fifth Circuit reversed and remanded a court order which refused to dismiss based on qualified immunity until the defendant and a third party, both public officials, submitted to depositions. The Fifth Circuit reasoned that the order was overly broad and not limited to the issue of qualified immunity. *Gaines*, 928 F.2d at 707. *Gaines* is distinguishable because it involved a *public official* challenging an order requiring *him* to submit to depositions.

their Fifth Amendment rights if released. (doc. 48, p. 2; doc. 63, p. 3.)

The Supreme Court's decision in *Garrity* "prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office." *Garrity*, 385 U.S. at 500. "More specifically, *Garrity* protects police officers from having to choose between cooperating with an internal investigation and making potentially incriminating statements. Immunity under *Garrity* prevents any statements made in the course of the internal investigation from being *used* against the officers in subsequent criminal proceedings." *United States v. Vangates*, 287 F.3d 1315, 1320 (11th Cir. 2002) (emphasis added) (quoting *In re Federal Grand Jury Proceedings*, 975 F.2d 1488, 1490 (11th Cir. 1992)). *Garrity* provides a "complete prohibition on the 'use in subsequent criminal proceedings of statements obtained under threat of removal from office . . .'" *In re Grand Jury Subpoena Dated December 7 and 8, Issued to Bob Stover, Chief of Albuquerque Police Dep't v. United States*, 40 F.3d 1096, 1102 (10th Cir. 1994) (quoting *Garrity*, 385 U.S. at 500). This "total prohibition on use provides a comprehensive safeguard, barring the use of compelled testimony as an 'investigatory lead,' and also barring the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures." *Id.*

Defendants argue that *Garrity* protects their statements in the internal affairs file from disclosure in this civil action because if released, the statements would implicate their Fifth Amendment right against self-incrimination in the pending criminal matters. This argument assumes that the City's production of Defendants' compelled statements would result in the prosecution's use of those statements against them in the criminal proceedings, speculates on what would happen if the compelled statements are produced, and is not supported by evidence that the prosecution would attempt to obtain those statements and use them against Defendants. *See Frierson v. City of*

*Terrell*, 2003 WL 21955863, at *2 (N.D. Tex. Aug. 15, 2003). It is well established that the privilege against self-incrimination "protects against real dangers, not remote and speculative possibilities." *Zicarelli v. New Jersey State Comm'n of Investigation*, 406 U .S. 472, 478 (1972); *see also Stover*, 40 F.3d at 1103. As in *Stover*, this Court declines to add "an additional layer of protection which would insure that the constitutional violation does not occur in the first instance," because "adequate safeguards are in place to insure that a police officer's privilege against self-incrimination is not violated." *Stover*, 40 F.3d at 1104–05. "The time for protection will come when, if ever, the government attempts to use the information against the defendant at trial. [The Court] is not willing to assume that the government will make such use, or if it does, that a court will allow it to do so." *Id.* at 1103.

*Garrity*'s protection assures Defendants that the prosecution will not be allowed to use their statements in a criminal proceeding, even if they possess them. *See Frierson*, 2003 WL 21955863, at *4 (citing *Garrity*, 385 U.S. at 500; *In re Grand Jury Subpoena*, 75 F.3d 446, 448 (9th Cir. 1996)). Since Defendants' compelled statements, if any, are protected from being improperly used by the prosecution in their criminal proceedings, and this protection is not diminished by their production in this case, Defendants' motion to quash Plaintiff's request for production of documents to the City is denied.

### III. CONCLUSION

Defendants' joint motion to quash Plaintiff's request to the City is **DENIED**, and their joint motion for protective order to stay discovery is **DENIED as moot** based on the prior discovery order (doc. 62).

**SO ORDERED** on this 27th day of January, 2012.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE